[L. A. No. 4198. Department One.—June 24, 1918.]

GRACE P. WARDEN et al., Appellants, v. SOUTH PASA-DENA REALTY & IMPROVEMENT COMPANY et al., Defendants; JOHN R. LEAHY, Respondent.

DEEDS—DESCRIPTION—BOUNDARIES—STREET LINE.—Under section 1112 of the Civil Code, providing that "a transfer of land, bounded by a highway, passes the title of the person whose estate is transferred to the soil of the highway in front to the center thereof, unless a different intent appears from the grant," a "different intent," namely the intent to give title only to the side line of the street, appears from a sheriff's deed on foreclosure of a mortgage in which the description of the lot of land conveyed runs to a "point on the southerly line" of a street and thence "along the southerly line" of the same street and to the northeast corner of said lot.

ID.—QUIETING TITLE—FINDING UNSUPPORTED BY EVIDENCE.—In this action to quiet title, in which a defendant set up by cross-complaint title in himself and offered in support of his claim a sheriff's deed to himself on the foreclosure of a mortgage, the finding that the premises described in the sheriff's deed are the same as those described in the complaint is not supported by the evidence.

ID.—DEFUNCT CORPORATION—DEED BY LAST DIRECTORS—INSUFFICIENCY OF.—A deed reciting that the grantors comprise the last board of directors of a defunct corporation and not purporting to convey the title of the company, the grantors signing as individuals, not as trustees, is a mere quitclaim deed of the individual grantors, and does not convey any other title.

APPEAL from a judgment of the Superior Court of Los Angeles County. John W. Shenk, Judge.

The facts are stated in the opinion of the court.

J. Irving McKenna, and Catherine A. McKenna, for Appellants.

Phelps, Greer, Winston & Wharton, and Paul E. Greer, for Respondent.

SHAW, J.—The plaintiffs appeal from the judgment in favor of the defendant John R. Leahy.

The complaint states a cause of action against the defendants to quiet alleged title of the plaintiff Grace P. Warden, to a tract of land described therein as lot 4, tract 246, in the city of South Pasadena, as per map recorded in Map Book 15, page 18, records of the County of Los Angeles. C. P. Warden has no interest in the action except as the husband of his coplaintiff.

The defendant, John R. Leahy, answered, denying that the plaintiffs are the owners of the property, or that his claim thereto is without right, and alleging that he is the owner thereof in fee simple. In a cross-complaint he further alleges his ownership, and that he derives title thereto under a sheriff's deed executed in pursuance of a foreclosure sale of the property, made by said sheriff upon a judgment foreclosing a mortgage on said property entered in the superior court of Los Angeles County on July 19, 1910, in an action wherein said Leahy was the plaintiff and Julia P. Warden and C. D. Warden were defendants, and from these facts he asks judgment quieting his alleged title in the premises against the claims of plaintiffs and the other parties to the action.

The plaintiffs claim title under two deeds. The first is a deed from Julia P. Warden and C. D. Warden to Grace P. Warden, executed on April 14, 1910, and recorded on August 5, 1910. This deed describes the property as "Lot 4, tract No. 246, in South Pasadena," situated in Los Angeles County. The second is a deed executed on April 25, 1912, by C. C. Teague, A. C. Hardison, A. W. Ryan, and Lyman Stewart, as grantors, to Grace P. Warden, as grantee. It describes the property as "Lot 4, tract 246, as per map recorded in Book 15, page 18 of maps, records of Los Angeles County."

The title of Leahy is derived wholly from the sheriff's deed mentioned in his cross-complaint. Its date is October 6, 1911. It describes the property conveyed as a parcel of land in South Pasadena, Los Angeles County, bounded as follows:

"Beginning at a point on the east line of Lot 6, 150 feet north of the southeast corner of said lot; thence west 150 feet on a line parallel with the southerly line of Lots 3, 4, 5 and 6; thence north, parallel with the easterly line of lot 6 to a point on the southerly line of Foothill street; thence easterly along the southerly line of Foothill street to the northeast corner of said lot; thence southerly along the easterly line of lot 6 to the place of beginning; said lots laid down and delineated on map of Oaklawn Addition Tract as per map recorded in Book 11, page 53, in the office of the county recorder of Los Angeles county."

It should be here noted that, under our decisions, this description carries title only to the southerly line of Foothill Street as shown on the survey and map of the Oak Lawn Addition referred to. It does not give the grantee title to the center of that street as in a case where the boundary line is said to run "along a street." Our decisions are to the effect that such a description as this in the sheriff's deed shows an intent to give title only to the side line of the street; the "different intent" referred to in section 1112 of the Civil Code. (*Severy* v. *Central Pacific R. R. Co.*, 51 Cal. 194, 197; *Alameda M. Co.* v. *Williams*, 70 Cal. 540, [12 Pac. 530].) The importance of this will be seen presently.

The court found that the property covered by this description was the same property as that described in the complaint herein. If that were true, the judgment for Leahy would probably be correct. His foreclosure suit was begun on November 30, 1909, and the judgment of foreclosure was entered on July 19, 1910. The title of Grace P. Warden, derived from the deed from Julia P. Warden to her, executed on April 4, 1910, would be subject to the foreclosure sale if, as we assume, she had notice of the action, and the sheriff's deed would prevail over her title under that deed. It does not appear that Grace P. Warden obtained any title by the deed from Teague, Hardison, Ryan, and Stewart. No title was proved to have been vested in them and hence their deed conveyed none. The deed recites that they comprise "the last board of directors of the Raymond Improvement Company, a defunct corporation." But it does not purport to convey the title of that company, assuming that it had any, which does not appear. The grantors sign as individuals, not as trustees; it is therefore a mere quitclaim deed of the individual grantors and does not convey any other title.

But the finding that the sheriff's deed conveys the same land as that described in the complaint is not supported by the evidence.

In order to understand the want of evidence to support this finding, an explanation is necessary. The land embraced in lot 4, tract No. 246 of South Pasadena, as shown on the map in book 15, page 18, has been the subject of three subdivisions. Maps of each were duly recorded. The first was recorded in the year 1887, and as it has been superseded by a later one, it need not be further referred to. The second was a resubdivision of a part of the lots included in the first map. This map was recorded on November 5, 1906. It was styled "Oak Lawn Addition tract." It will better illustrate the question to give here a plat of the portion of this subdivision which is material to the question. It is as follows:

(The dotted lines show the southern and western lines of the tract described in the sheriff's deed.)

The subdivision in which the lot described as lot 4, tract 246, first appears, was recorded in book 15, page 18, on March 23, 1909. This subdivision reduces the width of Foothill

Street from eighty feet to sixty feet, changes its name to Mound Avenue, and also changes the shape, size, and frontage of lots as formerly delineated. The twenty feet is taken from the southerly side of the street and is added to the tract subdivided into lots. Three lots, numbered 5, 6, and 7, are shown as fronting fifty feet on Fair Oaks Avenue and running back westerly therefrom 150 feet, No. 5 being the northerly lot of the three. Its northerly line is parallel with and 150 feet northerly of the former southerly lines of lots 3, 4, 5, and 6 of the Oak Lawn Addition map. Lot No. 4 of this subdivision is the one claimed by the plaintiff. It lies immediately north of lot 5 and is of the same length. Its east and west lines, respectively, are continuations of the end-lines of lot 5, and they extend from the line of lot 5 to the southerly line of Mound Avenue, formerly Foothill Street, so as to include all of the tract lying north of lot 5 and south of the southerly line of that street as reduced in width. Hence, the twenty-foot strip taken from the street and added to the lots is partly included in lot 4 and constitutes the northerly twenty feet thereof.

As the description in the sheriff's deed carried title only to the land lying south of the southerly line of Foothill Street, as it was laid down in the Oak Lawn Addition map, wherein it was shown to be eighty feet wide, it follows that it does not describe all the land included in lot 4, tract 246. Lot 4 includes the twenty-foot strip formerly included in Foothill Street; the description in the sheriff's deed does not include that strip. Hence, the court below erred in deciding, on the evidence before it, that the description in the complaint and that in the sheriff's deed were identical, and that Leahy was the owner in fee of the whole of lot 4, tract 246.

There is evidence which leads us to suspect that in June, 1908, at the time Mrs. Jackson bought the lot from Raymond Improvement Company and made the mortgage to Leahy, which was foreclosed, the new survey which culminated in the map of 1909, showing lot 4, tract 246, had been made, but that the lots were not yet numbered, and that the parties intended and believed that the description in the deed to her and in said mortgage embraced all of lot 4 as shown on the map afterward filed. Perhaps the calls in the sheriff's deed could be explained by evidence that the new survey was in existence and was intended to be referred to in said calls.

We need not decide the question. The testimony regarding it is altogether too vague, unsatisfactory, and incomplete to justify a finding that the description covers all of lot 4. The condition of the survey and the position of the lines at that time were not shown. No person except Mrs. Jackson testified on the subject; she did not testify to the declarations or intent of Leahy or of her grantors on the subject. It does not appear when the survey was made, nor is the date of the mortgage shown. The evidence is wholly insufficient to prove that the description in the sheriff's deed or mortgage, if construed in the light of the circumstances existing when they were executed, would cover the twenty-foot strip added to the lots in 1909.

It is proper to say, further, that the deed from Mrs. Jackson to Julia P. Warden, the grantor of the plaintiff, gives the same description as that contained in the sheriff's deed, and it did not convey to Julia P. Warden any title to the twenty-foot strip in controversy. Consequently the deed from Julia P. Warden to the plaintiff Grace P. Warden conveyed no title with respect to that strip. We have shown that she proved no title by the deed from Teague and others above mentioned. She was in possession, however, at the time she began the action, and as Leahy asserted his title in a cross-complaint and the judgment was that he is the owner of all of lot 4, tract 246, and has the right of possession thereof, he would be entitled to an execution thereon to recover the possession from Grace P. Warden. (Code Civ. Proc., sec. 380; *Kitts* v. *Austin,* 83 Cal. 172, [23 Pac. 290]; *Landregan* v. *Peppin,* 94 Cal. 468, [29 Pac. 771].) Under the evidence in this case, he has no right to possession of the twenty-foot strip in question. Hence we cannot say that the plaintiffs will not be injured by an affirmance of the judgment which will entitle the defendant to relief of that character. A reversal of the judgment is, therefore, imperative. We find no ground upon which the judgment in favor of Leahy can be sustained.

The judgment is reversed.

Sloss, J., and Richards, J., *pro tem.,* concurred.

Hearing in Bank denied.